**COGBURN LAW OFFICES**
JAMIE S. COGBURN, ESQ.
Nevada State Bar No. 8409
Jsc@cogburnlaw.com
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
Tel: (702) 384-3616
Fax: (702) 943-1936

**ROBBINS GELLER RUDMAN**
**& DOWD LLP**
Travis E. Downs III, Esq.
Benny C. Goodman III, Esq.
Brian O. O'Mara, Esq.
Nevada State Bar No. 8214
Erik W. Luedeke, Esq.
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel: (619) 231-1058
Fax: (619) 231-7423

**LAW OFFICE OF DEBRA S. GOODMAN P.C.**
Debra S. Goodman, Esq. *(pending pro hac vice application)*
1301 Skippack Pike, Suite 7A#133
Blue Bell, PA  19422
Tel: (610) 277-6057
Fax: (484) 231-1922

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| C. WALTER RIES, Derivatively on Behalf of A-POWER ENERGY GENERATION SYSTEMS, LTD.,<br><br>    Plaintiff,<br><br>  vs.<br><br>JINXIANG LU, KIN KWONG MAK, MICHAEL ZHANG, ZHENYU FAN, ROBERT B. LECKIE, DILIP LIMAYE, REMO RICHLI and JIANMIN WU,<br><br>    Defendants.<br><br>  – and – | Case No.:<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, CORPORATE WASTE AND UNJUST ENRICHMENT** |

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

A-POWER ENERGY GENERATION
SYSTEMS, LTD., a British Virgin Islands
corporation,

       Nominal Defendant

Plaintiff by and through his attorneys, submits this Verified Shareholder Derivative Complaint on behalf of A-Power Energy Generation Systems, Ltd., against the defendants named herein.

## OVERVIEW OF THE ACTION

1. This is a shareholder derivative action on behalf of A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company") against certain current and former members of its Board of Directors and certain executive officers seeking to remedy defendants' violations of law, including breaches of fiduciary duties, abuse of control, gross mismanagement, corporate waste and unjust enrichment, that occurred between August 27, 2009 and June 27, 2011 (the "relevant period").  By this action, plaintiff seeks to recover damages and other relief against defendants for destroying A-Power's once valuable corporate franchise.  During the relevant period, defendants continually issued false and misleading public statements concerning A-Power's financial operations, prospects and results.

## JURISDICTION AND VENUE

2. This court has jurisdiction under 28 U.S.C. §1332(a)(3) because Plaintiff and Defendants are citizens of different states or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

3. This Court has jurisdiction over each Defendant because each Defendant is either a corporation that conducts business in and maintains operations in this district, or is an

individual who has sufficient minimum contacts with this district so as to render the exercise of jurisdiction by the district courts permissible under traditional notions of fair play and substantial justice.

4.     Venue is proper in this court under 28 U.S.C. §1391(a) because: (i) A-Power is based in China with a subsidiary in Nevada; (ii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the dissemination of materially false and misleading information to the investing public, and aiding and abetting and conspiracy in violation of fiduciary duties owed to A-Power, occurred in this district; and (iii) defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## **THE PARTIES**

5.     Plaintiff C. Walter Ries is and has been a shareholder of A-Power continuously since October 2008.  Plaintiff will fairly and adequately represent A-Power's interests in this action.  Plaintiff is a resident of New York.

6.     Nominal defendant A-Power is a British Virgin Islands corporation with its headquarters located at no. 44 Jignxing Road, Tiexi District, Shenyang, Liaoning, China 110021.  A-Power Energy Generation Systems USA, Ltd., a subsidiary of A-Power, is based and has operations in Nevada.  A-Power is engaged in providing onsite distributed power generation systems and micro power grids for industrial companies.

7.     Defendant Jinxiang Lu ("Lu") has served as chairman of the board of directors of A-Power and chief executive officer ("CEO") since January 2008.  In addition to A-Power, Lu founded Liaoning Gaoke Energy Group Company Limited and Liaoning High-Tech Energy Saving and Thermoelectricity Design Research Institute in 2003 and serves as the President and CEO of these companies.  Defendant Lu knowingly or recklessly: (i) reviewed and approved

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of Generally Accepted Accounting Principles ("GAAP"); (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Lu is a resident of China.

8.     Defendant Kin Kwong Mak ("Mak") served as Chief Financial Officer ("CFO") of A-Power from May 2009 to July 2011. Prior to joining A-Power, Mak was managing director of Venfund Investment Management Ltd. since 2001, CFO of New Dragon Asia Corp. from 2004 to 2009, Managing Partner of Arthur Anderson Southern China from 1992 to 2001, and a Partner of Arthur Anderson Worldwide since 1985. Mak also serves, or served, as a director of numerous other companies, including Dragon Pharmaceutical Inc., Shenzhen Victor Onward Textile Industrial Co. Ltd., and Gemdale Industries, Inc. Defendant Mak knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Mak is a resident of china.

9.     Defendant Michael Zhang ("Zhang") has served as a director of A-Power since June 2010. Zhang joined A-Power in January 2010 as a Vice President. Prior to joining A-Power, Zhang spent nearly 20 years in internal audit, internal controls, corporate governance, and risk management related services with Ernst & Young, Deloitte Touche Tohmatsu CPA Ltd., Lenovo Group Ltd. and China National Petroleum Corporation. Defendant Zhang knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP;

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

(ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Zhang is a resident of China.

10.    Defendant Zhenyu Fan ("Fan") has served as a Director of A-Power since January 2008.  Fan is also a member of the A-Power Board's Audit Committee and Compensation Committee.  In addition to A-Power, Fan has worked as a manger at China National Machinery & Equipment Import & Export Corp. since 2002.  Defendant Fan knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith.  Defendant Fan is a resident of China.

11.    Defendant Robert B. Leckie ("Leckie") served as a director of A-Power from March 2008 to June 2011.  In addition to A-Power, Leckie has been responsible for the legal departments of multiple multinational corporations and has served as Chief Executive - Industrial Division for Novar Plc.  Defendant Leckie knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith.  Defendant Leckie is a resident of Texas.

12.    Defendant Dilip Limaye ("Limaye") served as a director of A-Power from January 2008 to June 2011.  Limaye also had been chair of the A-Power Board's Compensation Committee.  In addition to A-Power, Limaye is the Founder and President of the International Energy Services Company and the President of SRC Global, Inc.  Defendant Limaye knowingly

or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Limaye is a resident of India.

13.     Defendant Remo Richli ("Richli") served as a director of A-Power from January 2008 to June 2011. Richli also had been Chair of the A-Power Board's Audit Committee. In addition to A-Power, Richli has been an Associate Partner of Bridgelink AG, a private international mergers and acquisitions firm headquartered in Switzerland since 2005. Defendant Richli knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Richli is a resident of California and Switzerland.

14.     Defendant Jianmin Wu ("Wu") served as a director of A-Power from January 2008 to July 2011. In addition to A-Power, Wu is experienced in investment banking and finance, having served as Chief Representative of Huatai Securities Co., Ltd. since 2001, VP of Finance for Migao Corporation from 2005 to 2006, and as the Investment Banking Manager at Shenyin Wanguo Securities Ltd. from 1996 to 2001. Defendant Wu knowingly or recklessly: (i) reviewed and approved improper statements about A-Power's accounting for related-party transactions such that its financial statements were presented in violation of GAAP; (ii) failed to implement and maintain adequate internal controls to properly account for A-Power's related-party transactions; and (iii) failed to exercise his duty of oversight in good faith. Defendant Wu is a resident of China.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

15.     As officers and/or directors of A-Power, defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing, or should have known the adverse, non-public information about the business of A-Power including its finances, markets, present and future business prospects, and related-party issues, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meeting and committees thereof, as well as internal reports and other information provided to them in connection therewith.   Each of the defendants participated in the issuance of materially false and misleading statements contained in A-Power's shareholder reports, press releases and public filings.

## DEFENDANTS' FIDUCIARY DUTIES

16.     By reason of their positions as officers, directors, and/or fiduciaries of A-Power and because of their ability to control the business and corporate affairs of A-Power, defendants owed A-Power and its shareholders fiduciary obligations of care, loyalty, candor and good faith, and were and are required to use their utmost ability to control and manage A-Power in a fair, just, honest, and equitable manner.   Defendants were and are required to act in furtherance of the best interests of A-Power and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

17.     Each director and officer of the Company owes to A-Power and its shareholders the fiduciary duty to exercise good faith and loyalty in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, under their fiduciary duty of loyalty, defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, forecasts and financial condition so that the market price of the Company's stock would be based on truthful and accurate information.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

18.     Defendants, because of their positions of control and authority as directors and/or officers of A-Power, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

19.     Because of their advisory, executive, managerial and directorial positions with A-Power, each of the defendants had access to adverse non-public information about, among other things, the true nature of A-Power's financial operations and results, and the improper representations of A-Power concerning that information.

20.     At all times relevant hereto, each of the defendants was the agent of each of the other defendants, and was at all times acting within the course and scope of such agency.

21.     Defendants breached their duties of loyalty and good faith by misrepresenting the condition of the Company's business and finances, as detailed below.  In addition, as a result of defendants' faithless acts, the Company has been named as a defendant in several large, complex and costly to defend securities class action lawsuits.  As a result, A-Power has expended, and will continue to expend, significant sums of money and is subject to potentially significant liability for the wrongful acts of its officers and directors.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

22.     In committing the wrongful acts alleged herein, the defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, defendants further aided and abetted and/or assisted each other in breaching their respective duties.

23.     During all times relevant hereto, defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the defendants

were providing improper earnings and revenue guidance; (ii) enhance the defendants' executive and directorial positions at A-Power and the profits, power, and prestige that defendants enjoyed as a result of holding these positions; and (iii) deceive the investing public, including shareholders of A-Power, regarding the defendants' management of A-Power's operations, the Company's financial health and stability, and its future business prospects that had been misrepresented by defendants. In furtherance of this plan, conspiracy, and course of conduct, defendants, collectively and individually, took the actions set forth herein.

24.     Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, defendants caused the Company to issue improper financial statements.

25.     The purpose and effect of defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment. Moreover, defendants concealed adverse information concerning the Company's operations, financial condition, and future business prospects.

26.     Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements. Because the actions described herein occurred under the authority of the board, each of the defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

27.     Each defendant aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each defendant acted with knowledge of the primary

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

1    wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his

2    overall contribution to and furtherance of the wrongdoing.

3                                **SUBSTANTIVE ALLEGATIONS**

4           28.    A-Power is a publicly traded Company listed on the NASDAQ Stock Market LLC

5    ("NASDAQ") exchange under the symbol APWR.  A-Power is primarily engaged in providing

6    onsite distributed power generation systems and micro power grids for industrial companies.  It

7    is engaged in the design, construction, installation and testing of integrated distributed power

8    generation systems and micro power grids as stand-alone facilities, primarily in the People's

9    Republic of China and Southeast Asia, for various customers in the steel, chemical, ethanol,

10   cement and food industries.  A-Power designs projects, subcontracts its construction and

11   installation to third-party subcontractors and conducts testing on completed projects before

12   handing them over to customers.  The size of its projects range from 5 megawatts to 400

13   megawatts.  In addition, its distributed power generation systems utilizing biomass gasification

14   processes allow customers to utilize various waste products to produce electricity or recover

15   energy.

16              **DEFENDANTS ISSUE FALSE AND MISLEADING STATEMENTS**

17          29.    On August 27, 2009, defendants caused A-Power to issue a press release

18   announcing its unaudited second quarter 2009 financial results.  The Company reported net

19   income of $6.3 million, or $0.14 diluted earnings per share ("EPS"), and revenue of $57.5

20   million for the quarter ending June 30, 2009.

21          30.    On December 3, 2009, defendants caused A-Power to issue a press release

22   announcing its unaudited third quarter 2009 financial results.  The Company reported net income

23   of $9.8 million, or $0.28 diluted EPS, and revenue of $96.7 million for the quarter ending

24   September 30, 2009.  The press release also stated in part:

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

"We continue to make key strategic advancement in our wind turbine business, as we see the Chinese wind energy market is moving towards bigger turbines with proven track records. Our partnerships with GE and Fuhrlander demonstrated their strong endorsement on A-Power's engineering capability and production capacity, which also started to gain traction from wind farms in both China and other geographic markets," said Mr. Jinxiang Lu, A-Power's Chairman and CEO. "On the DG side of our business, together with government backed Shenyang Power Group, we are well positioned to win high-profile contracts for DG systems and micro power grids both in China and overseas."

Mr. Lu continued, "Our DG business progressed well during the third quarter. Fourteen out of our total 17 projects were under construction according to their respective schedules. As the Chinese government continues to emphasize energy conservation and encourages green technology applications, our DG business remains strong and our track records continue to extend. We also started our DG project in Thailand in December."

31.     Shortly after this release, A-Power's stock shot up to above $20 per share as A-Power prepared to complete a private placement.

**Defendants Continue to Make Improper Statements**

32.     Following the private placement, defendants caused A-Power to file a form 6-K, stating:

On July 10, 2009 Shenyang Power Group Company Limited ("SPG"), a 60%-owned subsidiary of the Company, signed a Memorandum of Understanding ("MOU") with Macau Natural Gas Co., Ltd. ("MNG") to construct an offshore liquefied natural gas ("LNG") complex to import, store and re-gasify LNG and to distribute natural gas to Macau and elsewhere. The MOU contemplates establishment of a project company to undertake the construction of the LNG terminals. Although the parties anticipated signing definitive agreements prior to December 31, 2009, certain licenses and approvals from the China National Development and Reform Commission ("NDRC") and the local Macau government required for the project have yet to be obtained, and the parties ***have postponed completion of definitive agreements. Unless such licenses and approvals are obtained, the Company does not expect that the parties will complete definitive agreements to proceed with this project***.

*                 *                 *

The Company is in the process of developing and implementing remediation plans to improve its internal control over financial reporting. Management of the Company expects to complete its remediation activities with respect to additional inadequacies in its internal control by the fourth quarter of 2010. ***Notwithstanding management's remediation activities, the Company***

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*expects to receive a qualified report related to its internal controls from its independent auditors in connection with the Company's upcoming annual report filing on Form 20-F for fiscal year ended December 31, 2009.*

33.     A-Power's stock collapsed back below $12.50 per share upon these disclosures, but continued to be artificially inflated as defendants concealed the extent of the Company's accounting problems.

34.     On March 31, 2010, defendants caused A-Power to issue a press release announcing its fourth quarter 2009 financial results.  The Company reported non-GAAP net income of $20.6 million, or $0.61 diluted EPS, and revenue of $125.9 million for the quarter ending December 31, 2009.  The Company further reported annual net revenue increased to $311.3 million for its fiscal year ended December 31, 2009.  Additionally, A-Power provided its guidance for 2010, forecasting net sales of approximately $380 million and net income of approximately $45 million.  The release stated in part:

> "We are very pleased with our fourth quarter results and continued delivery of annual growth featuring both our award-winning distribution power generation turn-key contract services and emerging wind turbine production.  As China has demonstrated its economic resilience throughout the global financial crisis and renewed its growth momentum driven by further infrastructure build-out and rapid urbanization, power generation continues to stay in the lime light.  Whether our DG micro-grid to complement often stressed state grids, or our large wind turbines to provide better economies of scale, A-Power focuses on bringing the best cost-effective solutions to the marketplace.  While we are aligning our strategic positions in Japan and US, our goal remains intact by leveraging best-of-breed renewable technologies to benefit the vast end users and maximize our shareholders' long-term value."

35.     On June 10, 2010, defendants caused A-Power to issue a press release announcing its unaudited first quarter 2010 financial results.  The Company reported net income of $29.3 million, or $0.64 diluted EPS, and revenue of $67.3 million for the quarter ending March 31, 2010.  The release stated in part:

> Mr. Jinxiang Lu, A-Power's Chairman and CEO commented, "We are very excited with our strong revenue growth and solid gross margin expansion in the first quarter.  Although the first quarter is typically a slow season in our DG

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

activities in most parts of China due to the winter weather condition, we set new records for both revenue and net income growth in first quarter of 2010. Our geographic diversification into southern China and international projects are contributing more DG revenues. Our wind turbine business continues to gain traction and we remain confident in the market outlook, as our larger turbines are receiving favorable consideration in China, and the outlook for future turbine exports also appears promising. With more components arriving and our production expanding, we are continuing to move forward on all facets of our wind turbine business, both domestically and internationally. On the financial side, we continued to work to strengthen our balance sheet and manage our cash flow to prepare ourselves for further expansion during 2010."

36.    On August 26, 2010, defendants caused A-Power to issue a press release announcing its second quarter 2010 financial results. The Company reported net income of $11.6 million, or $0.25 diluted EPS, and revenue of $74.8 million for the quarter ending June 30, 2010.

**The Truth Is Revealed**

37.    On December 1, 2010, defendants caused A-Power to issue a press release announcing its third quarter 2010 financial results. The Company reported a net loss of ($1) million, or ($0.02) diluted EPS, and that revenues had decreased to $57.3 million for the quarter ending September 30, 2010. Additionally, the Company lowered its guidance forecast for 2010 sales to $310 million versus its original forecast of $500 million. The Company attributed this to lower-than-expected wind turbine sales. The release stated in part:

Mr. Jinxiang Lu, A-Power's Chairman and CEO said, "A-Power's results in the third quarter were less than we hoped we would achieve. The shortfall was due mainly to lower revenues in our Distributed power generation segment because of the timing of work under contracts, and to less-than-planned sales in our Wind power segment. Although Wind power achieved revenues of $15.5 million in the third quarter, we had assumed we would be able to book revenues from a major customer, Spinning Star LLC. However to date, Spinning Star has been unable to secure the expected construction financing for its wind farm project in Texas.

"We believe our strategy to benefit from alternative power generation, in the forms of distributed power, wind power, and photovoltaic solar power, continues to be valid for the Company's long-term success and is in the best

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

interests of our shareholders.  Our design, engineering, suppliers, and operations are all in very good shape and remain competitive in the marketplace."

38.     On this news, A-Power's stock dropped $1.62 per share to close at $4.74 per share on December 1, 2010, a decline of 26% on high volume.

39.     On April 7, 2011, defendants caused A-Power to issue a press release announcing a delay in the reporting of its 2010 financial results, stating in part:

> Mr. Kin Kwong (Peter) Mak, A-Power's Chief Financial Officer, said, "The scope of the audit field work that is necessary to bring the audit of our 2010 financial statements to a conclusion was not immediately recognized when the conference call was initially scheduled to discuss our results.  After learning from both our internal team and from our outside professional advisers that the work on the financial statements and conclusion of the audit could not be completed prior to the date we had previously scheduled for release, we, of necessity, postponed the conference call and the release of the financial results for 2010.

> "While we very much regret the delay and confusion caused by our premature announcement of the conference call, it is most important that our financial statements for the year ended December 31, 2010 are completed with all due care and that these financial statements are accurate and reliable when they are released.

> "I again confirm that the delay was not the result of any accounting irregularities or investigation of accounting errors, nor do we expect any restatement of A-Power's previously audited financial statements as a result of the ongoing audit processes for 2010."

40.     On June 17, 2011, defendants caused A-Power to issue a press release announcing that defendant Leckie had resigned from the Company's board of directors, due to his views on process and best practices not being shared throughout the Company.  The release stated in part:

> A-Power Energy Generation Systems, Ltd. ("A-Power" or "the Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that Mr. Robert B. Leckie resigned from A-Power's Board of Directors on June 14, 2011.

> *Mr. Leckie resigned as a result of concerns that his views on process and best practices were not necessarily shared throughout the Company*, but Mr. Leckie has confirmed to the Company that his resignation was not prompted by any disagreement with A-Power on any matter relating to the Company's operations, policies, or practices.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

41.    On this news, A-Power stock dropped $0.40 per share to close at $1.85 per share on June 17, 2011 – a one day decline of over 17% on volume of nearly 2.2 million shares.

42.    Also on June 17, 2011, *seeking alpha* published an article about A-Power's failure to institute and maintain sufficient financial controls, which stated in part:

- APWR has a history of internal weaknesses over financial controls, which has resulted in an adverse opinion from A-Power's independent auditor. A-Power's auditor issued an adverse opinion in the 2009 audit and APWR has yet to publish its 2010 audited financial statements.

- Management's compensation structure is egregious, offering enormous bonuses on an all-or-none basis for achieving lofty performance goals.

- SAIC filings show that APWR is reporting significantly lower revenue and profit to the authorities in China. For 2009, SAIC filings showed approximately $25 million of revenue, compared to $311 million in SEC filings.

*        *        *

Businesses that operate in China file their financial statements with the State Administration for Industry and Commerce. These statements are an excellent place to start piecing together the truth. Reputable Chinese companies submit financial statements to the SAIC that resemble those published in the US. APWR's filings in China indicate that APWR is earning a tiny fraction of the revenue reported to the SEC and is potentially generating millions of dollars of losses rather than profits.

43.    On this news, the company's stock closed at $1.74 per share on June 20, 2011.

44.    On June 27, 2011, defendants caused A-Power to issue a press release announcing the resignation of the Company's auditor, MSCM LLP. The release stated in part:

A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that its independent auditor, MSCM LLP, has resigned. In its letter to the Company dated June 26, 2011, MSCM stated that it had resigned because the Company had not retained a qualified independent forensic accounting firm to evaluate certain business transactions that MSCM stated was necessary for MSCM to complete its audit of the Company's financial statements for the year ended December 31, 2010 on a timely basis.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

In light of MSCM's withdrawal, A-Power and members of the Audit Committee of the Board of Directors will be meeting with other qualified independent auditing firms.  The Company will announce its new independent auditor after the Audit Committee has selected a firm and an audit engagement contract has been entered into between the Company and that firm.

As a result of MSCM's resignation, the Company's annual report on Form 20-F for the year 2010 will be delayed beyond June 30, 2011, the date the filing is due at the Securities and Exchange Commission.  A-Power greatly regrets this delay and will work as rapidly as possible with a new independent auditor to complete the audit of its financial statements for the year 2010 and to then file its annual report on Form 20-F.

45.    After this news, on June 27, 2011, NASDAQ halted trading of A-Power stock at $1.67 per share due to the resignation of the Company's auditor, which forced the delay of its annual report.

46.    On June 28, 2011, defendants caused A-Power to issue another press release announcing the resignation of two more of its directors.  The release stated in part:

A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that two independent directors on its board of directors have resigned, effective June 27, 2011.  The board of directors has accepted their resignations.

Mr. Remo Richli has resigned as a director of A-Power and as chair of the board's audit committee.  ***Mr. Richli stated that his resignation was based on his understanding of events that occurred over the past few weeks, including the resignation of the Company's independent auditor.  He also stated that he did not agree with the course of action that the Company has proposed to take in response to recent events***.

Mr. Dilip R. Limaye has regretfully resigned as a director of A-Power and as chair of the board's compensation committee.  ***He stated that his decision to resign was prompted by the events of the last several weeks about which he communicated his concerns and views on actions that should be taken***.

Mr. Jinxiang Lu, A-Power's Chairman and Chief Executive Officer, said, "Regretfully, we have accepted the resignations of Mr. Richli and Mr. Limaye and understand their concerns and reservations.  We thank them for their contributions to the board and wish them well as they continue their careers."

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

47.     On July 1, 2011, defendants caused A-Power to issue yet another press release announcing the resignation of another of its directors.  The release stated in part:

> A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that an independent director on its board of directors has resigned, effective June 30, 2011.  The board of directors has accepted his resignation.
>
> Mr. Jianmin Wu has regretfully resigned as a director of A-Power and as a member of the board's audit committee.  ***Mr. Wu stated that, considering the recent changes occurring at the Company, he believed he would not be able to continue to work effectively as an independent director and contribute as a member of the board of directors***.
>
> Mr. Jinxiang Lu, A-Power's Chairman and Chief Executive Officer, said, "Regretfully, we have accepted the resignation of Mr. Wu and understand his concerns and reservations.  We thank him for his contributions to the board and wish him well as he continues his career."

48.     On July 5, 2011, defendants cause A-Power to issue a press release announcing the departure of A-Power's CFO.  The release stated in part:

> A-Power Energy Generation Systems, Ltd. ("A-Power"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that Mr. Kin Kwong (Peter) Mak, A-Power's Chief Financial Officer, will come to the end of his extended service contract on July 15, 2011.
>
> The Company also announced that Mr. Michael Zhang, the Company's Vice President for Strategic Planning, Internal Audit, and Internal Control, and recently elected to the Company's board of directors, will also serve as interim CFO, effective July 15, while the Company conducts a search to fill the CFO position.  As interim CFO, Mr. Zhang will oversee the Company's financial operations and financial reporting.
>
> Mr. Mak was appointed Chief Financial Officer in May 2009.  His two-year contract had been extended 1.5 months to July 15, 2011.  Mr. Mak said, "I am grateful for the Company's support of my work.  As agreed, the extension of my service contract term until July 15 is coming to an end.  I wish every success to Chairman Lu and to A-Power."
>
> Mr. Jinxiang Lu, A-Power's Chairman and Chief Executive Officer, said, "***We understand Peter's desire to continue his career in another direction, and we wish him well***.

"We are very fortunate to have an officer of Michael Zhang's high caliber and great experience in financial reporting available to step in as interim CFO as we work together to select our new auditor, complete the audit of our 2010 financial results, and then resume our regular financial reporting."

**Defendants' Actions Cause Significant Harm to A-Power**

49.     On August 18, 2011, defendants caused A-Power to issue a press release announcing that the Company had received a subpoena from the United States Securities and Exchange Commission ("SEC") which indicated that the SEC had initiated an investigation into possible violations of federal securities laws.  The release stated in part:

A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that it was notified recently by the staff of the U.S. Securities and Exchange Commission ("SEC") that *the SEC has initiated a formal, nonpublic investigation into whether the Company or any of its personnel violated the federal securities laws.*

On August 17, 2011, the SEC served the Company with a subpoena for documents in connection with its investigation.  The Company is committed to cooperating with the SEC.  The Company cannot predict the timing or outcome of the investigation.  The SEC has informed the Company that the investigation should not be construed as an indication that any violations of law have occurred.

50.     Finally, on September 6, 2011, defendants caused A-Power to issue a press release announcing that the Company had received a notice of noncompliance from NASDAQ.  According to the notice, defendants' actions have subjected A-Power's securities to suspension and eventual delisting.  The release stated in part:

A-Power Energy Generation Systems, Ltd. ("A-Power" or the "Company"), a leading provider of distributed power generation systems in China and a manufacturer of wind turbines, today announced that on September 1, 2011, it received a determination letter from the Staff of The Nasdaq Stock Market LLC ("Nasdaq").

*The Nasdaq Staff indicated in its letter that the continued listing of the Company's securities on Nasdaq is no longer warranted based on certain circumstances surrounding the resignation of the Company's independent auditor, MSCM LLP ("MSCM"), on June 26, 2011, as well as the circumstances surrounding the Company's recent director resignations.*  The

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES

9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

Staff's determination is based on the authority granted to Nasdaq under Listing Rule 5101.

In addition, the Staff determined that [the] Company's failure to timely file with the SEC the Form 20-F for the year ended December 31, 2010 (the "Form 20-F"), as required by Listing Rule 5250(c), constitutes a separate basis for delisting.

Accordingly, ***unless the Company requests a hearing before a Nasdaq Listing Qualifications Panel by September 8, 2011, its securities would become subject to suspension followed by delisting. The Company's securities are presently in a trading halt***.

The Company intends to timely request a hearing before the Panel, at which it will respond to the concerns raised by the Staff and request continued listing pending the filing of its Form 20-F. As part of the request to the Nasdaq Hearings Department, the Company will also request that any suspension of the Company's securities be stayed at least until the Panel renders its determination following the hearing. In the event that the Panel does not grant this request and the Company's securities are suspended in advance of the hearing, the Company's securities would become eligible for trading in the over-the-counter market. Notwithstanding, the hearing would go forward and the Panel would have the ability to terminate the suspension and reinstate trading on Nasdaq, if so inclined based on the information provided at the hearing. There can, however, be no assurance that the Panel will grant the Company's request for continued listing.

51.     Due to defendants' misconduct, A-Power's financial statements and financial results were not prepared in conformity with GAAP, nor was the financial information an accurate presentation of the Company's operations due to defendants' improper accounting for, and disclosures about, the Company's financial results, related-party transactions and business prospects.

52.     GAAP are principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice. Financial statements filed with the SEC that are not prepared in accordance with GAAP are presumed to be misleading according to regulation s-x (17 c.f.r. §210.401(a)(1)).

53.     The Company's reported financial results were in violation of GAAP and the following principles:

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

a.     That financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit and similar decisions.  FASB Statement of Concepts no. 1, ¶34.

b.     That financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources.   FASB Statement of Concepts no. 1, ¶40.

c.     That financial reporting should provide information about an enterprise's financial performance during a period.  FASB Statement of Concepts no. 1, ¶42.

d.     That financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it.  FASB Statement of Concepts no. 1, ¶50.

e.     That financial reporting should be reliable in that it represents what it purports to represent.  FASB Statement of Concepts no. 2, ¶¶58-59.

f.     Completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions.   FASB Statement of Concepts no. 2, ¶79.

g.     That conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered.  FASB Statement of Concepts no. 2, ¶95.

54.     As a result of defendants' false statements, A-Power's stock traded at artificially inflated levels during the relevant period.  However, after the above revelations seeped into the

market, the Company's shares were hammered by massive sales, sending them down nearly 92% from their relevant period high.

55.     As a direct and proximate result of defendants' actions, A-Power has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

a.      Costs incurred investigating and defending A-Power and certain officers in a number of securities class action lawsuits filed against the Company, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment;

b.      Costs incurred in relation to an SEC investigation into potential violations of federal securities laws, plus potentially millions more in penalties resulting from the SEC investigation;

c.      Costs incurred as a result of the delisting of the Company's securities from the NASDAQ exchange; and

d.      Costs incurred from compensation and benefits paid to the defendants who have breached their duties to A-Power.

56.     Moreover, these actions have irreparably damaged A-Power's corporate image and goodwill.  For at least the foreseeable future, A-Power will suffer from what is known as the "liar's discount," a term applied to the stock of companies who have been implicated in illegal behavior and have misled the investing public, such that A-Power's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

57.     Plaintiff incorporates ¶¶1-56.

58.     Plaintiff brings this action derivatively in the right and for the benefit of A-Power to redress injuries suffered, and to be suffered, by A-Power as a direct result of defendants'

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment, as well as the aiding and abetting thereof by the defendants.  A-Power is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this court that it would not otherwise have.

59.     Plaintiff will adequately and fairly represent the interests of A-Power and its shareholders in enforcing and prosecuting its rights.  Plaintiff is an owner of A-Power stock and was an owner of A-Power stock during times relevant to defendants' illegal and wrongful course of conduct alleged herein.

60.     At the time of filing of this complaint the A-Power board of directors consists of the following individuals:  defendants Lu, Zhang, and Fan, and Jiwei Wang and Yanqi Yu.

61.     Based upon the facts set forth throughout this complaint, applicable law and the longstanding rule that equity does not compel a useless act, a pre-filing demand upon the A-Power board of directors to institute this action against the officers and members of the A-Power board of directors is excused as futile.  A pre-filing demand would be a useless and futile act because:

a.     The members of A-Power's board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.  These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

b.     The A-Power board of directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

to conceal or disguise those wrongs from A-Power's stockholders or recklessly and/or consciously and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties.

c.      As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors and attendance at management and board meetings, defendants Lu, Zhang and Fan knew the adverse non-public information regarding the improper conduct.  Pursuant to their specific duties as board members, each was charged with overseeing and/or managing the Company and conducting its business affairs and each breached the fiduciary duties owed to A-Power and its shareholders in that they failed to prevent and correct the improper statements.

d.      Since defendants Lu, Zhang and Fan, a majority of the A-Power board, participated in or approved the misconduct, the entire board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because a majority of the A-Power board is interested personally in the outcome since it is their actions which have exposed A-Power to millions of dollars in potential liability for violations of applicable laws.

e.      The acts complained of constitute violations of fiduciary duties and violations of law and are incapable of ratification.

f.      The known principal wrongdoers and beneficiaries of the wrongdoing complained of herein dominated and controlled A-Power's board.  Thus, the board could neither exercise independent objective judgment in deciding whether to bring this action nor vigorously prosecute this action.

g.      The directors of A-Power cannot be relied upon to reach a truly independent decision as to whether to commence the demanded action against themselves and

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

the officers responsible for the misconduct alleged in this complaint in that, *inter alia*, the board was dominated by defendant Lu, the Company's chairman and CEO, who was personally and directly involved in the acts of mismanagement alleged herein, and who approved the actions which are complained of and to whose directives and views the board has consistently acceded and will continue to accede.  This domination of the board of directors' ability to validly exercise its business judgment renders it incapable of reaching an independent decision as to whether to accept any demand by plaintiff.

h.      Defendants Lu, Zhang and Fan, a majority of the A-Power board, authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not have fairly and fully prosecuted such a suit even if such suit was instituted by them.

i.      A-Power has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for A-Power any part of the damages A-Power suffered and will suffer thereby.

62.     Defendant Fan, as a member of the audit committee, was responsible for monitoring the Company's internal controls, disclosure controls and procedures and financial reporting practices.

63.     As a member of the audit committee, defendant Fan was also required to, among other things, review and discuss A-Power's quarterly and annual financial statements and the Company's disclosures provided in quarterly and annual reports with management, the senior internal auditing executive and the independent auditor.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COGBURN LAW OFFICES**
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

64.     Nonetheless, defendant Fan breached his fiduciary duties of good faith and loyalty by failing to implement sufficient internal controls and procedures to ensure the accuracy of the Company's public statements concerning A-Power's related-party transactions, business prospects and financial condition.  Defendant Fan also breached his fiduciary duty in causing A-Power to issue the false and misleading statements set forth above, in the absence of such controls, and specifically failed to prevent or correct the false and misleading public statements concerning A-Power's financial results.

65.     If A-Power's officers and directors are protected against personal liability by directors' and officers' liability insurance policies, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of A-Power.  However, if directors' and officers' liability insurance policies cover defendants, these policies likely contain provisions which eliminate coverage for any action brought directly by A-Power against these defendants, known as, *inter alia*, the "insured versus insured" exclusion.  As a result, if these directors were to sue themselves there will be no insurance protection for the derivative claims.  Thus, this is a further reason why they would not have brought such a suit, for to do so would subject them and their colleagues and/or friends to a judgment of millions that would be payable from their individual assets alone.  On the other hand, if the claims are brought derivatively, such insurance coverage will provide a basis for the Company to effectuate a recovery.

66.     As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees and directors, and attendance at management and/or board meetings, each of the defendants knew of the wrongful acts or omissions complained of herein.  While in possession of this material adverse non-public information regarding the Company, defendants each profited in terms of salaries, stock options

and/or sale of personal stock at peak trading prices during the relevant period.   Because defendants received personal financial benefits from such transactions, they are interested and any demand upon them is futile.

67.     The defendants, because of their interrelated business, professional and personal relationships, have developed debilitating conflicts of interest that prevent the board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein.

68.     Plaintiff has not made any demand on shareholders of A-Power to institute this action since such demand would be a futile and useless act for the following reasons:

a.     A-Power is a publicly traded Company with approximately 46 million shares outstanding, and thousands of shareholders;

b.     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

c.     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### For Breach of Fiduciary Duty Against All Defendants

69.     Plaintiff repeats and realleges each and every allegation contained above.

70.     Defendants owed and owe A-Power fiduciary obligations.  By reason of their fiduciary relationships, defendants owed and owe A-Power the highest obligation of good faith, fair dealing, loyalty and candor in the management of the Company.

71.     Defendants each violated and breached their fiduciary duties of good faith and loyalty.  They have each also been responsible for the gross and reckless mismanagement of A-

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

1   Power and ignored their fiduciary responsibilities by causing the Company to engage in the

2   unlawful conduct described herein.

3       72.    Defendants engaged in the above conduct in intentional breach of their fiduciary

4   duties to the Company.

5       73.    Defendants conspired to abuse, and did abuse, their positions of control and

6   oversight at A-Power.

7       74.    As a direct and proximate result of defendants' failures to perform their fiduciary

8   obligations, A-Power has sustained significant damages.  Plaintiff, as a shareholder and

9   representative of the Company, seeks damages and other relief for the Company.

10
### COUNT II

### For Abuse of Control Against All Defendants

    75.    Plaintiff repeats and realleges each and every allegation contained above.

    76.    Defendants' misconduct alleged herein constitutes a breach of their fiduciary

duties because they abused their ability to control and influence A-Power, for which they are

legally responsible.

    77.    As a direct and proximate result of defendants' abuse of control, A-Power has

sustained significant damages.

    78.    As a result of the misconduct alleged herein, defendants are liable to the

Company.

### COUNT III

### For Gross Mismanagement Against All Defendants

    79.    Plaintiff repeats and realleges each and every allegation contained above.

    80.    By their actions alleged herein, defendants, either directly or through aiding and

abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to

prudently managing the assets and business of A-Power in a manner consistent with the operations of a publicly held corporation.

81.     As a direct and proximate result of defendants' gross mismanagement and breaches of duty alleged herein, A-Power has sustained significant damages.

82.     As a result of the misconduct and breaches of duty alleged herein, defendants are liable to the Company.

**COUNT IV**

**For Corporate Waste Against All Defendants**

83.     Plaintiff repeats and realleges each and every allegation contained above.

84.     As a result of the improper conduct described herein, and by failing to properly consider the interests of the Company and its public shareholders and by refusing to conduct proper supervision, defendants have caused A-Power to waste valuable corporate assets and incur substantial costs to defend defendants' unlawful actions.

85.     As a result of the corporate waste, defendants are liable to the Company.

**COUNT V**

**For Unjust Enrichment Against All Defendants**

86.     Plaintiff repeats and realleges each and every allegation contained above.

87.     By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of A-Power.

88.     Plaintiff, as a shareholder and representative of A-Power, seeks restitution from these defendants, and each of them, and seeks an order of this court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

89.     Plaintiff has no adequate remedy at law.

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

1.      Against all defendants and in favor of the Company for the amount of damages sustained by the Company as a result of defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, corporate waste and unjust enrichment;

2.      Directing defendants to take all necessary actions to reform and improve A-Power's corporate governance and internal procedures to comply with applicable laws and to protect A-Power and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote, the following Corporate Governance Policies:

        (a)      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

        (b)      a provision to permit the shareholders of A-Power to nominate at least two candidates for election to the Board; and

        (c)      a proposal to appropriately test and then strengthen the internal audit and control functions.

3.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including disgorging, attaching, impounding, imposing a constructive trust on or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of A-Power has an effective remedy;

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX:(702) 943-1936

4.      Awarding to A-Power restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

5.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

6.      Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  September 23, 2011

COGBURN LAW OFFICES

By: /s/Jamie S. Cogburn
Jamie S. Cogburn, Esq.
Nevada Bar No. 8409
9555 S. Eastern Ave., #280
Las Vegas, NV  89123

ROBBINS GELLER RUDMAN
& DOWD LLP
Travis E. Downs III, Esq.
Benny C. Goodman III, Esq.
Brian O. O'Mara , Esq.
Nevada Bar No. 8214
Erik W. Luedeke, Esq.
655 West Broadway, Suite 1900
San Diego, CA  92101

LAW OFFICE OF DEBRA S. GOODMAN P.C.
Debra S. Goodman, Esq.
1301 Skippack Pike, Suite 7A#133
Blue Bell, PA  19422

*Attorneys for Plaintiff*

COGBURN LAW OFFICES
9555 S. Eastern Ave., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616  FAX:(702) 943-1936